IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 MAY 13 PM 4: 21

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

MICHAEL LUSTER,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        No. 03-2244 Ma/An
                                   )
MEMPHIS LANDINGS APARTMENTS,       )
et al.,                            )
                                   )
        Defendants.                )

---

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S MOTION TO STRIKE EXPERT TESTIMONY AS MOOT

---

This case arises from the injury Michael Luster ("Luster") sustained after diving into the swimming pool at The Landings Apartments complex in Memphis, Tennessee. Luster brings claims of negligence and negligence per se. Before the court is defendants ML Tennessee Apartments, LP, and Equity Residential Properties Management Corporation's (collectively the "Defendants") motion for summary judgment, filed on December 17, 2004. Plaintiff Michael Luster ("Luster") responded on January 14, 2005, and the Defendants filed a reply brief on January 26, 2005. Also before the court is Luster's "Motion to Strike Expert Testimony Offered in Support of Defendants' Motion for Summary Judgment," filed on January 14, 2005. The Defendants filed a response on January 26, 2005. For the following reasons, the court DENIES Defendants' motion for summary judgment, and DENIES Plaintiff's motion to strike as moot.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on  5-17-05

58

## I. Jurisdiction

Luster is a resident of Tennessee. (Am. Compl. at ¶ 1.) Defendant ML Tennessee Apartments, LP, is a foreign limited partnership. (Id. at ¶ 4.) There is no evidence that any partner of ML Tennessee Apartments, LP, is a citizen of Tennessee. Equity Residential Properties Management Corporation is a foreign corporation with its principal place of business in Chicago, Illinois. (Id. at ¶ 6.)[1] Luster seeks over $30 million in damages. (Id., Relief at ¶ 3.) This court, therefore, has jurisdiction under 28 U.S.C. § 1332. The case arises from an injury Luster suffered at the Landings Apartments complex in Memphis, Tennessee. (Id. at ¶¶ 16, 19, 24.) Because the accident occurred in the Western District of Tennessee, venue is proper under 28 U.S.C. § 1391(a)(2).

## II. Background

The following facts are undisputed except where otherwise noted. On April 28, 2002, Luster and Monkell Bowen were at Monkell Bowen's residence playing video games and drinking beer. (Luster Dep. at 93.) Luster claims he drank two 16 oz bottles of beer. (Id. at 95.) Around 4:30 p.m., Luster and Monkell Bowen drove to Courtney Bowen's apartment in the Landings Apartments complex (Id. at 96.) The Landings Apartments were owned by ML Tennessee Apartments, LP, and managed by Equity Residential Property

---

[1] The Amended Complaint names 10 defendants. All defendants except Equity Residential Properties Management Corporation and ML Tennessee Apartments, LP, were dismissed in an order entered on September 10, 2003.

Management Corporation. (Ans. at ¶ 4, 6.)

Luster, Monkell Bowen, Courtney Bowen, and another person named Deshon cooked out and watched television. (Luster Dep. at 98.) Luster did not consume any additional alcohol. (Id.) The group decided to swim in the Landings Apartments complex's swimming pool. (Id. at 101.) The swimming pool is less than 4 feet deep and is surrounded by a gate which was unlocked that night. (Id. at 106; Ebro Dep. at 69.) Once at the swimming pool, Luster entered the water and swam several laps across the pool's north end. (Luster Dep. at 113.) Luster left the water and observed Courtney Bowen dive into the swimming pool's south end. (Id. at 114-16.) Several seconds later, Luster copied Courtney Bowen and dove into the pool's south end. (Id. at 116.) Luster's dive caused his head to strike the bottom of the pool. (Id.) Paramedics were called after the accident. (Monkell Bowen Dep. at 51.) Luster's spine was injured in the accident and he is now a paraplegic. (Compl. at ¶¶ 22-24.)

The parties dispute whether there was daylight when Luster's accident occurred. On April 28, 2002, sunset was at 7:44 p.m. and civil twilight ended at 8:11 p.m. (Mem. in Supp. of Def.'s Mot., Ex. 2.) In his deposition, Luster stated that he and his friends decided to go swimming around 7:15 p.m. and arrived at the swimming pool shortly thereafter. (Luster Dep. at 105.) The accident occurred within ten minutes of their arrival at the swimming pool.

3

(Monkell Bowen Dep. at 45-46.) The Defendants contend that this evidence shows that the accident occurred around 7:30 p.m., while there was daylight.

Luster claims that it was dark outside when he and his friends went swimming. (Luster Dep. at 119; Monkell Bowen Dep. at 39; Courtney Bowen Dep. at 35.) The paramedics' incident report states that the paramedics arrived "On Scene" at 9:23 p.m. (Pl.'s Resp., Ex. 1.) Monkell and Courtney Bowen both estimated that the paramedics arrived 15 to 20 minutes after the accident occurred. (Monkell Bowen Dep. at 51; Courtney Bowen Dep. at 52.) Luster contends that this evidence shows that the accident occurred around 9:00 p.m., well after sundown and the end of civil twilight.

The swimming pool has a "no diving" sign and a pool regulations sign. (Terry Dep. at 73.) Luster did not read either sign. (Luster Dep. at 107, 118.) There are depth markings on the swimming pool deck and the vertical walls of the pool indicating the depth of the water along the swimming pool's perimeter. (Terry Dep. at 51.) Luster did not see the depth markings. (Luster Dep. at 118.) Courtney Bowen, who had not been drinking and was the first to dive in the swimming pool, also did not see the depth markers or warning signs. (Courtney Bowen Dep. at 32, 44-45.)

Luster contends that the signs and the depth markings were not visible because it was dark outside and the pool deck was improperly lit. (Ebro Dep. at 63-64, 90, 107, 111, 114.) At

4

nighttime, the artificial lighting around the swimming pool illuminates the pool deck with 0.1 foot candles of light. (Id. at 128.) The Rules and Regulations of the State of Tennessee's "Minimum Design Standards For Public Swimming Pools" requires public pools used at night to be illuminated by a minimum of 5 feet candles of light at the deck level. Tenn. Comp. R. & Regs. R. 1200-23-5-.03(3)(t).

The underwater pool lights in the swimming pool were not operating when the accident occurred. (Perkins Dep. at 15; Terry Dep. at 25.) The property manager and maintenance people at the Landings Apartments complex had known that the underwater lights had been off or not functioning for one week to two months before Luster's accident.[2] (Perkins Dep. at 16-17; Terry Dep. at 29; Hoehn Dep. at 14.) Luster contends that, because the pool lights were off, he could not see the pool's bottom. (Ebro Dep. at 90.) The Defendants contend that, at the time of Luster's accident, the lighting on the pool deck was adequate to allow Luster to see the pool's bottom. (Jones Dep. at 65.) The Rules and Regulations of the State of Tennessee's "Minimum Design Standards For Public Swimming Pools" requires public pools used at night to be illuminated by underwater lights that make all areas of the pool "clearly visible to an observer on the pool deck." Tenn. Comp. R. & Regs. R. 1200-

---

[2] The witnesses' testimonies differ as to why the lights were not functioning during this time. All witnesses, however, agree that the lights had not been illuminated for some time.

23-5-.03(3)(t).

According to Thomas Ebro, an expert witness for Luster, when a swimming pool is inadequately lit at night the chance that a serious accident will occur increases. (Ebro Dep. at 92-93.) Had the pool been better illuminated, the bottom, the depth markers and the warning signs would all have been visible. (Ebro Dep. at 125.) In Ebro's opinion, the absence of adequate lighting made the swimming pool unsafe and in violation of Tennessee's rules and regulations for public swimming pools; under these conditions, standard safety practices in the swimming pool industry would have been to close the swimming pool at night and lock the gate. (Ebro Dep. at 108-09, 134.)

A blood analysis performed on April 28, 2002, at 10:11 p.m. showed that Luster's blood alcohol content ("BAC") was 0.20 gms/dl. (Stafford Aff. at ¶ 5a, b.) According to the Defendants' expert Dr. David Stafford, "[a]n individual who is conscious with a BAC of 0.20 gms/dl would exhibit some or all of the following symptoms: prolonged reaction time; impaired judgment in that the ability to make good and timely decisions is decreased, and the ability to judge things such as time, speed, and orientation is diminished; impaired visual acuity; impaired auditory function; impaired fine and gross motor skills and adversely effected equilibrium, balance and gate." (Id. at ¶ 5d.)

6

## III. Choice of Law

A federal district court is required to apply the "choice of law" rules of the state in which it sits. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>Cole v. Mileti</u>, 133 F.3d 433, 437 (6th Cir. 1998). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." <u>Klaxon</u>, 313 U.S. at 496. Therefore, this court must apply the Tennessee rule to determine which jurisdiction's law to apply.

For tort claims, Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." <u>Hataway v. McKinley</u>, 830 S.W.2d 53, 59 (Tenn. 1992). The injury occurred in Tennessee, and both parties assume that Tennessee law applies. No party alleges that another state has a more significant relationship to the litigation. The court will, therefore, apply Tennessee law.

## IV. Summary Judgment Standard

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "bears the burden of clearly and convincingly

establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden, however, by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See Interroyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989); Street, 886 F.2d

8

at 1479-80. Parties have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor.  Id.

## V. Analysis

The Defendants argue for summary judgment in their favor because Luster's own negligence was 50% or more at fault in causing his injuries.[3] (Mem. in Supp. of Def.'s Mot. at 11-12.)  In Tennessee, a plaintiff may recover in a negligence action "so long as a plaintiff's negligence [is] less than the defendant's negligence. . . ." McIntyre v. Balentine, 833 S.W.2d 52, 57 (Tenn. 1992). "[T]he fault apportionment question is ultimately dependent upon all the circumstances of the case; and juries will . . . rely upon their common sense and ordinary experience in apportioning fault." Eaton v. McLain, 891 S.W.2d 587, 593 (Tenn. 1994).

In a negligence action where a comparative fault defense is raised, "[i]f the evidence is evaluated in the light most favorable to the plaintiff and reasonable minds could not differ that [his] fault was equal to or great than that of the defendants, summary judgment in the defendant's favor may be granted." Staples v. CBL & Associates, Inc., 15 S.W.3d 83, 91-92 (Tenn. 2000). But, "[g]enerally, summary judgments are not appropriate in negligence actions." Brookins v. The Round Table, Inc., 624 S.W.2d 547, 550 (Tenn. 1981). "In negligence cases, issues of proximate cause, intervening cause and contributory negligence are peculiarly issues

---

[3]The Defendants' motion for summary judgment only addresses Luster's claim for negligence. It does not address Luster's claim for negligence per se.

for the trier of fact, not the court to determine. Such issues can only be decided by the court in cases where inferences from uncontroverted facts are so certain that all reasonable men, in the exercise of a free and impartial judgment, must agree upon them." Id.; see also Eaton, 891 S.W.2d at 590; Doe v. Linder Const. Co., Inc., 845 S.W.2d 173, 187 (Tenn. 1992); Haga v. Blanc & West Lumber Co., Inc., 666 S.W.2d 61, 65 (Tenn. 1984); Frady v. Smith, 519 S.W.2d 584, 586 (Tenn. 1974). When in doubt, the court should draw no inference from the facts about a plaintiff's contributory negligence. See Schindler v. Southern Coach Lines, 217 S.W.2d 775, 78 (Tenn. 1949).

Luster's BAC was 0.20 gms/dl. According to Dr. Stafford, the Defendants' expert witness, this level of alcohol in Luster's body would have impaired his coordination, ability to make decisions, and ability to judge his surroundings. (Stafford Aff. at ¶ 5d.) Luster has not presented evidence contradicting the statements in Dr. Stafford's affidavit. If the BAC test performed on Luster is believed, a jury could conclude that Luster was negligent in swimming and diving while his mental and physical abilities were impaired by alcohol.

Luster presents evidence that the swimming pool's underwater lighting and deck lighting violated Tennessee regulations for public swimming pools used at night. According to Luster's expert witness Thomas Ebro, under these circumstances it would have be standard practice for the swimming pool operator to close the

facility at night and lock the pool's gate.[4] (Ebro Dep. at 134.) If Ebro's testimony is believed, a jury could conclude that the Defendants were negligent in leaving the swimming pool open at night.

Luster and the Defendants have presented evidence from which a jury could conclude that the other side's negligence contributed to Luster's injury. The court cannot say "that all reasonable men, in the exercise of a free and impartial judgment" would agree that Luster's negligence in diving into a pool after consuming alcohol was greater than the negligence of the Defendants in leaving an improperly lighted pool open at night. The apportionment of fault is "peculiarly" a question for the jury and unless the inferences drawn from the facts in a negligence action are certain, the court may not grant summary judgment. <u>Brookins</u>, 624 S.W.2d at 550. The court cannot conclude that, as a matter of law, Luster's fault was equal to or greater than the fault of the Defendants and the Defendants motion for summary judgment is denied.

## VI. Motion to Strike

Luster asks the court to strike the expert testimony of Dr. David Stafford because the toxicological report Stafford relied on in his affidavit was never entered into evidence or authenticated. (Pl.'s Mot. to Strike at ¶¶ 3-4.) The Defendants responded to Luster's motion to strike by filing a new affidavit in which Dr. Stafford authenticates the toxicology report and states that the

---

[4] Because the parties dispute whether daylight was present when Luster's accident occurred, the court must assume, for the purposes of this motion for summary judgment, that it was dark outside when Luster's accident occurred.

toxicology report is a document "of the type that is reasonably relied upon by experts in my field, toxicology, in formulating opinions or inferences upon the subject of toxicology." (Stafford Supp. Aff. at ¶ 3.) The court has ruled in Luster's favor on the Defendants' motion for summary judgment even after taking into account the statements in Dr. Stafford's affidavit. Consequently, there is no need for the court to rule on Luster's motion to strike, and it is denied as moot.

## VII. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. Plaintiff's motion to strike is DENIED as moot.

So ORDERED this 13th day of May 2005.

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 58 in
case 2:03-CV-02244 was distributed by fax, mail, or direct printing on
May 17, 2005 to the parties listed.

---

Jeffery S. Glatstein
SPICER FLYNN & RUDSTROM
80 Monroe Ave.
Ste. 500
Memphis, TN 38103--246

Y. Kevin Williams
WEINBERG WHEELER HUDGINS GUNN & DIALS, LLC
950 East Paces Ferry Road
Ste. 3000
Atlanta, GA 30326

Robert D. Flynn
SPICER FLYNN & RUDSTROM
80 Monroe Ave.
Ste. 500
Memphis, TN 38103

Christopher T. Byrd
WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC
950 East Paces Ferry Road
Ste. 3000
Atlanta, GA 30326

Danese K. Banks
COCHRAN CHERRY GIVENS SMITH & BOLTON
One Commerce Square
Ste. 2600
Memphis, TN 38103

Brian P. Strength
COCHRAN CHERRY GIVENS & SMITH
P.O. Box 830419
Tuskegee, AL 36083

Jock M. Smith
COCHRAN CHERRY GIVENS & SMITH
P.O. Box 830419
Tuskegee, AL 36083

Honorable Samuel Mays
US DISTRICT COURT