FILED BY _____ D.C.

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF TENNESSEE, WESTERN DIVISION AT MEMPHIS**

'05 MAY 13 PM 4: 21

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

MICHAEL LUSTER,

      **Plaintiff,**

vs.                               **CIVIL ACTON NO. 03-2244 MA/AN**

ML TENNESSEE APARTMENTS, LP, and
EQUITY RESIDENTIAL PROPERTIES
MANAGEMENT CORPORATION,

      **Defendants.**

---

### JOINT PRE-TRIAL ORDER

---

Come now the parties, and submit this Joint Pre-Trial Order:

**I.    JURISDICTIONAL QUESTIONS**

    None.

**II.    PENDING MOTIONS**

    Defendants' Motion for Summary Judgment, filed on December 17, 2004, is still

pending.  In addition, the following motions in limine are pending:  (1) Motion in Limine

regarding testimony of pre-accident conversation among defendant employer and employee; (2)

Motion in limine regarding plaintiff's expert, Tom  Ebro, (3) Motion In limine regarding

testimony of plaintiff's expert Randall McDaniel, as well as the plaintiff's motion to strike expert

testimony offered in support of the defendant's motion for summary judgment.

**III.    SUMMARY OF THE CASE**

    This is a premises liability case in which liability is disputed.  On Sunday, April 28, 2002,

Plaintiff Michael Luster (hereinafter referred to as "Plaintiff" or "Plaintiff Luster") was injured





after diving into a pool at The Memphis Landings Apartments.  Plaintiff Luster hit his head and injured his neck, resulting in complete paralysis from the waist down with limited movement of his arms and hands.  At the time of the incident, he was a guest of Courtney Bowen's, an apartment resident of The Memphis Landings Apartments.  At the time of this accident, the apartments were owned by ML Tennessee Apartments, LP and managed by Equity Residential Property Management Corporation.  Plaintiff Luster and Monkell Bowen, brother of Courtney Bowen, had been together drinking beer.  Together, Plaintiff Luster and Monkell Bowen traveled to Courtney Bowen's apartment for a cookout Courtney Bowen was having.  After eating, watching TV, and relaxing, Plaintiff Luster, Monkell Bowen, Courtney Bowen, and a female friend of Courtney's, decided to go swimming at the apartment complex pool.

The pool was open at that time from 10:00 a.m. to 10:00 p.m.  Plaintiff Luster and the others left Courtney's apartment and arrived at the pool before 10:00 p.m..  Upon their arrival at the pool area, at least one of the underwater lights to the pool were out.  They entered the pool area through the north gate.  The pool has a "B" shape, with two basins.  Plaintiff Luster got into the pool at the north end and swam back and forth a couple of times.  He found this end to be shallow, exited the pool and dried his face.  Plaintiff Luster then observed Courtney Bowen dive into the south end of the pool.  Plaintiff Luster, then, immediately dove in after Courtney Bowen.  Although Courtney Bowen's dive was successful, Plaintiff Luster's was not.  His head struck the bottom of the pool and rendered him a paraplegic.

Plaintiff Michael Luster is single man, thirty-four years of age, and is the father of DeAndra Luster, a ten year old.  He had been employed at Bryce Corporation as a press helper.  However, he had been laid off from this employer several months prior to the accident and, thus, was unemployed at the time of the accident.

## IV.    CONTENTIONS OF THE PARTIES

### A.    Plaintiff's Contentions

It is Plaintiff's position that this accident was caused by the negligence of the Defendants. Plaintiff Luster did not have the appropriate information available to him to make an informed decision as to whether to dive into the pool on the south end or not.  Plaintiff contends that the deck depth markers lacked contrast to the deck; the pool markers inside the pool were misleading due to the water level; the one sign present at the time lacked visibility in that it was not illuminated or placed in a conspicuous place; and there was no pool lighting at all, - a fact known to the Defendants prior to the accident.

At the time of this accident, the pool area, both above ground and underwater, was not appropriately lit both by Tennessee standards and pool industry standards.  Tennessee standards state at a minimum, that there shall be five foot candles per square foot at the deck level.  The pool industry standards are a minimum of 20 foot candles of illumination.  Plaintiff's expert, Tom Ebro, recreated the illumination that was in place at the time of the accident and measured it at .124, - which is 1/10 of one foot candle, clearly below standards set by Tennessee and the pool industry.  With respect to underwater illumination, Tennessee's standards state "not less than 0.5 watts shall be provided per square foot of pool surface area."  The pool industry standards are 60 lumens per square foot of water surface area.  There were no underwater lights working at the time of the accident, the Defendants were aware of it, and made a conscious decision to not provide lighting.

In addition to inadequate illumination, the depth markers were also inadequate. Tennessee standards require depth markers to be spaced at intervals no greater than twenty (20) feet with numerals of at least four (4) inches in height and of a color contrasting with the

3

background.  Further, Tennessee standards require that the depth of the water shall be plainly marked in feet "at or above the water surface on the vertical pool wall". The Landings Apartments pool area on April 28, 2002 was not in compliance at the time of the accident of either rule.

Lastly, there was one unlit sign at the south far end of the pool, away from the north entry gate, which is the gate Plaintiff Luster entered from.  Not only was the sign not illuminated for Plaintiff to see it but the sign itself was an inadequate warning in accordance with Tennessee and pool industry regulations.  The more appropriate sign is one which includes actual "warning", "caution", or "danger" language, the prohibition against diving, the explanation for the prohibition (shallow water), the consequences (death or paralysis) and a pictogram. Each of these violations and circumstances made it impossible for Plaintiff Luster to make an informed decision about the depth of the pool and whether he should dive into it or not.

Although Plaintiff Luster had been drinking on that fateful Sunday evening, he followed the lead of Courtney Bowen, who had not been drinking and dove into the unlit, and inadequately marked pool.

Plaintiff Michael Luster has filed a complaint against Defendants and is entitled to compensatory damages, including damages for medical expenses, past and future, great mental anguish, mental pain and suffering, physical pain and suffering, loss of earning capacity and loss of ability to enjoy a normal life. Plaintiffs' expert witness, an economist, has opined that the economic loss suffered by Plaintiff Luster is $6,191,878.00.  Plaintiff's medical expenses, to date, are excess of $550,000.00.  The total amount of damages Plaintiff contends he is entitled to is $30,000,000.00.

**B.    Defendant's Contentions**

It is the contention of these defendants that Mr. Luster's diving accident of April 28, 2002, although admittedly unfortunate, occurred without any fault or neglect on the part of these defendants. The pool at The Landings Apartment community was well maintained, properly serviced and satisfied the governing State of Tennessee Operating Regulations. In addition, this pool was regularly inspected and approved for use by the Shelby County Health Department.

Proper and appropriate depth markers were located at intervals around the perimeter of the pool as well as additional depth markers on the tile walls of the pool itself. Thus, the pool was clearly marked to show that its depth ranged from only 3' to a maximum of 4' in depth.

Further, even without such markings, it was, or should have been readily observable to any person exercising reasonable care and judgment for his own safety, that the pool was shallow in depth. In that regard, there were a series of "wedding cake" style steps at various spots within the pool so as to allow patrons to wade into the water. These steps were a clear indicator that the pool was shallow. Indeed, one such set of these "wedding cake" steps was located in the south end of the pool, the area of the pool into which Mr. Luster made his ill-advised dive.

In addition to depth markers as above described, a set of rules and regulations for use of the pool was prominently displayed in the pool area. Importantly, it is the contention of this defendant that two separate signs were also posted in the pool area, one of which read "NO LIFEGUARD ON DUTY", with another separate sign informing users of the pool that there shall be "NO DIVING".

Although the plaintiff contends that lighting within the pool area was inadequate, it is the contention of these defendants that although the lighting was adequate, in fact, the lighting conditions have no relevancy to the occurrence of this incident. Rather, it is the contention of

these defendants that this diving accident, together with all claimed injuries, damages and losses now claimed by Mr. Luster, were directly, proximately and legally caused by Mr. Luster's own negligence. In that regard, it is the contention of this defendant that Mr. Luster, at the time of the incident, was a mature adult, 31 years of age. Mr. Luster had been swimming since his youth, having completed two swimming courses as a child. Further, Mr. Luster used and enjoyed his family's inground pool, with Mr. Luster considering himself at the time of the accident a good and competent swimmer. It is undisputed that Mr. Luster was aware that no lifeguard was on duty at the time of this incident, with it further being the contention of these defendants that Mr. Luster made no efforts to protect his own safety by looking to determine the depth of the pool before making his dive nor, for that matter, did he even look at the depth markers prior to attempting this dive.

There is also a factual dispute as to whether Mr. Luster was present at the pool during daylight hours which, of course, would further obviate lighting as an issue in this lawsuit. That is, although the plaintiff now claims that the incident occurred after nightfall, in his Complaint filed in this cause, as well as in his sworn deposition testimony, the plaintiff alleges that he arrived at the pool area sometime between 7-7:30 p.m. On April 28, 2002 sunset was not until 7:44 p.m., with civil twilight extending until 8:11 p.m. Thus, per Mr. Luster's testimony, his presence at that time of the evening, would have allowed him ample opportunity to observe the shallow depth of the pool.   Alternatively, if the pool and surrounding deck was dark, as claimed by the plaintiff, then, in that event, Mr. Luster was guilty of negligence in diving head first into a darkened area, without first ascertaining the depth of the pool.

In any event, it is further without dispute that Mr. Luster, by his own admission, was in the pool, either wading or swimming, prior to attempting his dive. It is the contention of these

defendants that Mr. Luster would therefore have actual knowledge of the pool's shallow depth from his very use of the pool.

Further, it is without question that Mr. Luster was exceedingly intoxicated at the time of this accident. Upon his admission to the Regional Medical Center at Memphis (The Med) following this accident, Mr. Luster's blood alcohol level was measured at .20, nearly three times the legal level of intoxication for operating a motor vehicle in the State of Tennessee. According to a witness' account, Mr. Luster had the odor of beer on his breath at the time he was pulled from the pool. It is therefore the contention of these defendants that Mr. Luster's judgment was obviously impaired as a result of this high level of intoxication. Thus, it is further the contention of these defendants that the actions of Mr. Luster, including his own voluntary intoxication, were the direct, proximate and legal cause of the accident and the injuries, damages and losses now claimed by him. Accordingly, it is the contention of these defendants that the doctrine of modified comparative fault in Tennessee bars any recovery by the plaintiff or, alternatively, that such negligent conduct on the part of Mr. Luster serves to reduce, diminish or mitigate damages otherwise recoverable in this matter. Furthermore, these defendants dispute the nature, extent and amount of damages, losses and expenses now claimed by this plaintiff.

In summary, it is the contention of these defendants that they deny that they were guilty of any acts of negligence which directly, proximately or legally caused the accident and the now claimed injuries, losses or damages. Further, it is the contention of these defendants that the accident, and the claimed damages, were directly, proximately and legally caused by the negligent acts and omissions on the part of the plaintiff, Michael Luster.

## V.    SPECIFIC FACTS STIPULATED TO BY THE PARTIES

1.    The Memphis Landings Apartments were owned by ML Tennessee Apartments, LP on April 28, 2002.

2.    The Memphis Landings Apartments were managed by Equity Residential Property Management Corporation on April 28, 2002.

3.    On April 28, 2002, Courtney Bowen was a resident at the Memphis Landings Apartments on Winchester Road, Memphis, Tennessee.

4.    On or about April 28, 2002, Plaintiff Michael Luster was a guest, along with Monkell Bowen, and another friend, DeShon Hampton, at the apartment of Courtney Bowen.

5.    Prior to arrival at Courtney Bowen's apartment,  Plaintiff Luster and Monkell Bowen were at Monkell Bowen's residence drinking beer and playing video games.

6.    Upon arrival at Courtney Bowen's apartment, Plaintiff Luster, Monkell Bowen, and Courtney Bowen cooked out and watched television.

7.    After eating, watching TV, and relaxing, Plaintiff Luster, Monkell Bowen, and Courtney Bowen,  decided to go swimming at the apartment complex pool.

8.    The pool was open at that time from 10:00 a.m. to 10:00 p.m.

9.    Upon their arrival to the pool area, at least one of the underwater lights to the pool was out.

10.    Plaintiff Luster and the others entered the pool area through the north gate.

11.    The pool had a "B" shape, with two basins.

12.    After arriving at the swimming pool, Plaintiff Luster placed his towel in a chair,

entered the swimming pool at the north end, and swam back and forth a couple of times.

13.     Plaintiff Luster found the north end to be shallow, exited the pool and dried his face.

14.     Plaintiff Luster then observed Courtney Bowen dive into the south end of the pool.

15.     Plaintiff Luster, then, immediately dove in after Courtney Bowen.

16.     Courtney Bowen made a successful dive.

17.     Plaintiff Luster struck his head on the bottom of the pool.

18.     On April 28, 2002, sunset was at 7:44 p.m. and civil twilight ended at 8:11 p.m.

19.     The paramedics arrived at the pool at 9:23 p.m.

20.     Depth markings were located on the pool decking and vertical walls of the pool indicating the depth of the pool at multiple locations along the swimming pool perimeter.

21.     Luster knew there was no lifeguard on duty at the time of the accident.

22.     At the time of the accident on April 28, 2002, there was a sign posted at the pool which read "No Diving" with a separate sign posted which read "No Lifeguard on Duty."

## VI.   CONTESTED ISSUES

### A.   Contested Issues of Fact

1.     Whether Plaintiff Luster dove into the swimming pool as a result of previously drinking alcoholic beverages or as a result of an inability to see depth markers and signage as a result of Defendants' action or inaction.

9

2.      Whether the depth markers were visible or adequate at the time of the accident.

3.      Whether the signage was visible or adequate at the time of the accident.

4.      Whether the depth of the pool could be appreciated at the time of the accident by Plaintiff Luster.

5.      To what extent, if any, was Plaintiff Luster's judgment impaired as a result of drinking

6.      To what extent, if any, was Plaintiff Luster's judgment impaired as a result of the lights not being functional at the pool, the depth markers, and signage.

7.      Whether there is any negligence on Plaintiff Luster's part as to the cause of this accident.

8.      Whether there is any negligence on Defendants' part as to the cause of this accident.

9.      Whether the accident happened in daylight or night time hours?

10.     Whether Mr. Luster was at the pool during daylight hours?

11.     Whether Mr. Luster was aware, or should have been aware by the exercise of reasonable care, as to the depth of the pool?

12.     Whether Mr. Luster looked at or saw the depth markers, rules and regulations sign, and/or the "No Diving" sign prior to attempting his dive?

13.     What, if any, steps were taken by Mr. Luster to assure his own safety before attempting the dive?

14.     Did Mr. Luster attempt a dive into a dark, unlit pool without first attempting to judge the depth of the water?

15.     Were one or more of the deck lights surrounding the pool area not functioning at

the time of the subject accident?

16. Is the basin on the south end of the pool larger than the north end basin?

17.     How much alcohol did Mr. Luster consume on the date of the accident prior to attempting his dive?

18.     How much alcohol did Monkell Bowen consume on the date of the accident prior to Mr. Luster attempting his dive?

19.     How much, if any, alcohol was consumed by Courtney Bowen on the date of the accident prior to Mr. Luster attempting his dive?

20.     Was it dark or light at the time Mr. Luster arrived at the subject pool?

21.     Was Courtney Bowen and/or Monkell Bowen aware of the shallow depth of the pool prior to Mr. Luster attempting his dive into the shallow water?

22.     How long had the plaintiff been in the pool, or the deck and/or spa area surrounding the pool, prior to plaintiff attempting his dive into the shallow pool?

23.     How long did it take the paramedics, or other first responders, to arrive at the scene of the accident?

24.     Had the subject swimming pool been altered after May 27, 2000 but before the accident of April 28, 2002?

25.     The nature, extent and amount of the damages, losses and expenses now claimed by the plaintiff are contested and, accordingly, in dispute?

26.     Whether Mr. Luster would have become a press operator is in dispute.

27.     The amount of earnings claimed by the plaintiff as of the date of the accident, together with projected future income losses are likewise in dispute.

28.     Whether the lighting was adequate at the time of the accident.

**B.**     **Contested Issues of Law**

1.      Whether the Design Standards for Public Swimming Pools as set forth in § 1200-23-5-.03 of the Rules of the Tennessee Department of Health, Bureau of Health Services Administration, Division of General Environmental Health are applicable to this subject pool as pertains to the accident of April 28, 2002.  (The plaintiff disputes that a contested issue of law exists in that the defendants admitted the applicability of these Regulations in their Answer.  *See* ¶ 52-54 thereof).

2.      Whether the plaintiff, Michael Luster, was guilty of fault greater than 50% so as to bar any recovery in this cause by the plaintiff as a matter of law under Tennessee's Doctrine of Modified Comparative Fault?

3.      All issues of law implicit in the pending Motion for Summary Judgment and any and all submitted Motions in Limine, as well as the plaintiff's motion to strike expert testimony offered in support of the defendant's motion for summary judgment.

4.      Whether or not a violation of the aforementioned Regulations constitutes negligence per se.

## VII.   EXHIBITS

**A.**     **Plaintiffs' Exhibits**

1.      Diagram of swimming pool and surrounding pool area.

2.      Photographs of depth markers on deck prior to alterations.

3.      Photographs of pool and surrounding area.

4.      Photos of signage at pool.

5.      Medical Records and bills from Michael Luster's health care and rehabilitation providers.

6.      Videotape of Plaintiff Michael Luster pre-accident.

7.      Photos of Plaintiff Michael Luster pre-accident.

8.      Videotape ("A Day in a Life") of Plaintiff Michael Luster post-accident.

9.      Any document, diagram, chart, graph, scale, report or photograph contained in Plaintiff's expert, Tom Ebro's file, which has been previously inspected by Defense counsel, including but not limited to his report reflecting his opinion regarding the accident and all exhibits attached to his deposition.

10.     Any document, diagram, chart, graph, scale, report or photograph contained in Robert Vance's file, which has been previously inspected by Defense counsel, including but not limited to his report reflecting his opinion regarding the economic damages incurred by Plaintiff and all exhibits attached to his deposition.

11.     Any document, diagram, chart, graph, scale, report or photograph  contained in Randall McDaniel's file, which has been  previously inspected by Defense counsel, including but not limited to his report reflecting his opinion regarding the life care plan of Plaintiff and all exhibits attached to his deposition.

12.     Plaintiff Michael Luster's Income Tax information for the years preceding his accident.

13.     Tennessee Rules and Regulations, 1200-23-5-.01,  .02, and .03.

14.     Spring Gate Rehab records and bills.

15.     Any item listed by Defendants in Defendants' Exhibits.

**B.      Defendant's Exhibits**

1.      Diagram(s) of the swimming pool and surrounding pool area.

2.      Photographs depicting the subject swimming pool, surrounding deck areas and

other areas adjacent to the pool.

3.      Photographs of the signage at the pool on the date of the accident.

4.      An exemplar of the "No Diving" sign affixed to the wall adjacent to the pool on the date of the accident.

5.      Photographs of the depth markers on the deck and/or side walls of the pool depicting these markings as of the date of the accident.

6.      All exhibits contained in the file and/or attached as Exhibits to the deposition of the defendant's expert, Dr. Tom Griffiths, specifically including his report.

7.      Medical records of Plaintiff from the Regional Medical Center at Memphis (The Med) which specifically includes the Laboratory report dated April 28, 2002, titled Serum & Urine Toxicology, reporting the plaintiff's blood alcohol content following admission to The Med.

8.      Official record of the time of sun set and twilight as recorded for April 28, 2002.

9.      Affidavit and/or report of Dr. David Stafford.

**VIII.   WITNESSES**

**A.      Plaintiff's Witnesses**

**Will Call**
1.      Michael Luster
2.      Nelson Luster
3.      Courtney Bowen
4.      Monkell Bowen
5.      Ricky (Richard) Terry
6.      Robert Vance
7.      Randall McDaniel
8.      Tom Ebro
9.      Rob Sawyer (photos and video)
10.     Spring Gate Rehabilitation Representative(s)- Mary Jackson
11.     Dr. Ed Hines – Michael's current doctor
12.     Steve Fitzgerald - Former supervisor at Bryce
13.     Any witness on Defendant's list of witnesses.

**May Call**

14. Leslie Perkins
15. Jeff Braswell
16. Other Defendant or Mid-America Employees
17. Case manager at Spring Gate Rehab
18. Spring Gate – Kenneth Jones - CNA
19. Spring Gate - Gloria Spencer – CNA
20. Spring Gate – Valerie Pitts – CNA
21. Spring Gate – Lisa Nelson – CNA
22. Spring Gate – Ella Griffin – CNA
23. Spring Gate – Jackie Somerville – wound care nurse – no longer there
24. Spring Gate – Theresa Isaac – wound care nurse
25. Spring Gate- Donronda Hall – activity director
26. Spring Gate - Bobbi Williams – nurse – administers medicine
27. Spring Gate - Nurse Johnnie – nurse - administers medicine
28. Psychologist
29. Physical therapist/occupational therapist
30. Dr. Robert Greene (Healthsouth - therapy)
31. Dr. Michael Muhlbauer (2nd surgery)
32. Dr. Steven Seiler (The Med – initial hospitalization)
33. Dr. Clyde Smith (former doctor)
34. Dr. Ed Hines (current doctor)
35. Dr. Hammond (doctor before Smith)
36. Dr. William Faulkner (prior to accident)
37. Dr. Chin (former doctor)
38. Shelby County Health inspector (Callisto)
39. The custodians of the records of Michael Luster's health care and rehabilitation providers.

**B.    Defendant's Witnesses**

**Will Call**

1. DeWayne Hall (in person or by deposition)

**May Call**

1. Richard Terry
2. Leslie Perkins
3. Dana Jones
4. Karen Hoehn
5. Dr. Tom Griffiths
7. Travis D. Housley (fire department paramedic)
8. Lt. Wardie Parks (fire department paramedic)
9. Sherri Flax, M.D. (Director of Laboratory at The Med)
10. Curtistine Calliste (Health Department inspector)
11. Any and all witnesses identified by the plaintiff on his "Will Call" and/or "May Call" list

12.     Any witnesses necessary for rebuttal of proof offered by Plaintiff's
        witnesses
13.     Dr. David Stafford
14.     The custodians of the records of Michael Luster's health care and
        rehabilitation providers
15.     Elnora Williams
16.     Aqua Malone
17.     Deborah Lane

In the event any additional witnesses or exhibits are to be offered, the party intending to offer the witnesses or exhibits shall notify opposing counsel as soon as possible prior to trial. In the case of additional witnesses, the notification shall include their names and addresses and the general subject matter of their testimony. In the case of additional exhibits, a description of the contents shall be provided. Any party seeking to add additional witnesses or exhibits, must show good cause for the omission of the witnesses or exhibits from this order.

The above notification requirements shall not apply to rebuttal witnesses and exhibits which could not reasonably have been anticipated prior to trial.

## C.     Deposition Testimony

1.      Plaintiff's Offer:  At this time, Plaintiff does not intend to offer any deposition testimony; however, should the need arise, Plaintiff reserves the right to offer deposition testimony.

2.      Defendants' Offer: At this time, defendants do not intend to offer any deposition testimony; however, should the need arise, (i.e., due to unavailability of a witness), these defendants reserve the right to offer deposition testimony.

## D.     Estimated Length of Trial

The parties estimate that trial will last five (5) days.

## E.     Jury or Non-Jury

The parties have demanded a jury.

**F.      Amount of Ascertainable Damages**

At the time of the accident, Michael Luster was thirty-one years old. He currently resides at Spring Gate Rehabilitation facility, - a nursing home.  Robert Vance, an economist, and Randy McDaniel, a life care  plan expert, have been hired on this matter and have provided reports. Based on their figures, the reasonable estimate of  Michael Luster's damages are $6,191,878.00, - $716,280.00 pretrial and $5,475,598.00 post trial or future amount.  His medical expenses to date are in excess of $550,000.00.  The Defendants dispute the nature, extent and amounts of these claimed damages.

**G.      Attorneys Interested in Case**

  a.  For Plaintiffs– Jock M. Smith, Brian Strength, Danese K. Banks of

    The Cochran Firm.

  b.  For Defendants – Robert Flynn, Jeffrey Glatstein of Spicer, Flynn & Rudstrom

**H.      Special Equipment**

Neither the Plaintiff nor the Defendants anticipate the need for any special equipment and will make use of the ELMO system.  Plaintiff's counsel shall confirm prior to trial that Plaintiff Luster's wheelchair can be accommodated in the courtroom.


IT IS SO ORDERED this the 13th day of May, 2005.

                 _____

                UNITED STATES DISTRICT COURT JUDGE
                SAMUEL  HARDY MAYS

**APPROVED FOR ENTRY:**

THE COCHRAN FIRM - MEMPHIS


By:_____
       Jock Smith
       Brian Strength
       Danese K. Banks
       Attorneys for Plaintiffs
       One Commerce Sq., 26th Floor
       Memphis, TN 38103
       (901) 523-1222




SPICER, FLYNN, & RUDSTROM, P.L.L.C.


By:_____
       Robert Flynn
       Jeffrey Glatstein
       Attorneys for Defendant
       80 Monroe Avenue, Suite 500
       Memphis, Tennessee  38103
       (901) 523-1333


J:\Data\RDF\37690 Mphs. Landings Apts V. Luster\Pleadings & Discovery\Joint Pretrial Order DRAFT 07.Doc

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 59 in
case 2:03-CV-02244 was distributed by fax, mail, or direct printing on
May 17, 2005 to the parties listed.

---

Jeffery S. Glatstein
SPICER FLYNN & RUDSTROM
80 Monroe Ave.
Ste. 500
Memphis, TN 38103--246

Danese K. Banks
COCHRAN CHERRY GIVENS SMITH & BOLTON
One Commerce Square
Ste. 2600
Memphis, TN 38103

Y. Kevin Williams
WEINBERG WHEELER HUDGINS GUNN & DIALS, LLC
950 East Paces Ferry Road
Ste. 3000
Atlanta, GA 30326

Christopher T. Byrd
WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC
950 East Paces Ferry Road
Ste. 3000
Atlanta, GA 30326

Robert D. Flynn
SPICER FLYNN & RUDSTROM
80 Monroe Ave.
Ste. 500
Memphis, TN 38103

Brian P. Strength
COCHRAN CHERRY GIVENS & SMITH
P.O. Box 830419
Tuskegee, AL 36083

Jock M. Smith
COCHRAN CHERRY GIVENS & SMITH
P.O. Box 830419
Tuskegee, AL 36083

Honorable Samuel Mays
US DISTRICT COURT